**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| IN RE EX PARTE APPLICATION OF<br>**NICHOLAS CARTER AS RECEIVER**<br>**FOR SUTTON, LTD AND WEMBLEY, LTD**<br>Pursuant to 28 U.S.C. § 1782,<br>For an Order to Obtain Discovery<br>In Aid of a Foreign Proceeding | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No: _______________ |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION**
**FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN DISCOVERY**

**WITHERS BERGMAN LLP**
John A. Farnsworth, Esq.
157 Church Street
New Haven, Connecticut 06510-2100
Tel: (203) 789-1320
Fax: (203) 785-8127
*Attorneys for Nicholas Carter as Receiver*
*for Sutton, Ltd and Wembley, Ltd*

# TABLE OF CONTENTS

**Page(s)**

FACTUAL BACKGROUND ....................1

EVIDENCE IN THE POSSESSION OF PARTIES TO BE SUBPOENAED....................5

ARGUMENT ....................7

I. The Applicant Satisfies Section 1782's Statutory Requirements for Relief ....................8

II. The Court Should Exercise its Discretion to Grant the Applicant's Section 1782 Application ....................11

A. Webster and Ms. Wyckoff Are Not Parties to the BVI Proceeding ....................12

B. The BVI Court Will Likely Accept this Court's Assistance ....................13

C. This Application Is Made in Good Faith and Is Not Made to Circumvent the Discovery Rules of the BVI Court ....................14

D. The Subpoena Requests Are Not Unduly Intrusive or Burdensome....................14

CONCLUSION....................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Application of Aldunate*,
3 F.3d 54 (2d Cir. 1993)....8, 9

*In re Application of Hill*,
2005 U.S. Dist. LEXIS 10838 (S.D.N.Y June 3, 2005)....7, 9, 10

*In re Application of Malev Hungarian Airlines*,
964 F.2d 97 (2d Cir. 1992)....7

*Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*,
869 F.3d 121 (2d Cir. 2017)....9

*Euromepa v. R. Esmerian, Inc.*,
154 F.3d 24 (2d Cir. 1998)....10

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*,
2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Jan. 4, 2007)....13

*Gushlak v. Gushlak*,
486 Fed. Appx. 215 (2d Cir. 2012)....8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004)....7, 8, 11, 12, 13

*Jiangsu S.S. Co. v. Success Superior Ltd.*,
2015 U.S. Dist. LEXIS 18388 (S.D.N.Y Jan. 6, 2015)....10

*In re Microsoft Corp.*,
428 F.Supp.2d 188 (S.D.N.Y. 2006)....12

*OJSC Ukrnafta v. Carpatsky Petroleum Corp.*,
2009 U.S. Dist. LEXIS 109492 (D. Conn. 2009) ....13, 14

**Statutes**

28 U.S.C. § 1782.... *passim*

Nicholas Carter (the "Applicant"), as the court-appointed receiver for Sutton, Ltd ("Sutton") and Wembley, Ltd ("Wembley") (together, the "Companies"), by and through his undersigned counsel, respectfully applies to this Court for an order pursuant to 28 U.S.C. § 1782 authorizing the Applicant to issue subpoenas to Elizabeth Wyckoff and Webster Bank, N.A., both residing and/or conducting business within the District of Connecticut, for the production of documents and information for use in a proceeding in the Territory of the Virgin Islands (the "British Virgin Islands" alternatively, the "BVI").

**FACTUAL BACKGROUND**

The Applicant is the Managing Director and British Virgin Islands Territory Leader at PricewaterhouseCoopers (BVI) Limited who, as a result an order dated October 10, 2018 (the "BVI Order"), was appointed by the Eastern Caribbean Supreme Court, Court of Appeal for the BVI (the "BVI Court of Appeal") to act as a receiver on behalf of Sutton and Wembley. (Declaration of Nicholas Carter, executed on August 20, 2019 (the "Carter Decl.") at ¶ 3; *see also* Declaration of Sara-Jane Knock, executed on August 20, 2019 (the "Knock Decl.") at ¶ 5.) The BVI Court of Appeal issued its order directing the appointment of a receiver in connection with a proceeding (case no. BVIHCVAP2016/0009 & 0010 – the "BVI Proceeding") to determine whether to redeem the Companies' bearer shares (the "Bearer Shares") and, if so, in what manner. (*Id.*) The appointment of a receiver became necessary because the Bearer Shares had not been converted, exchanged or redeemed by the Companies in accordance with the BVI Business Companies Act 2004, as amended (the "2004 Act"). (*See* Carter Decl. at ¶ 3; Knock Decl. at ¶¶ 3, 5-6.)

The BVI Proceeding arose out of a unique issue relating to efforts to redeem bearer shares in Sutton and Wembley. Sutton and Wembley are both companies incorporated under the laws of the British Virgin Islands that initially issued only bearer shares. A "bearer share" is

defined by section 2 of the 2004 Act as "a share represented by a certificate which states that the bearer of the certificate is the owner of the share . . . ." (Knock Decl. at ¶7.)

Sutton issued one bearer share, and Wembley issued 100 bearer shares. (*Id.* at ¶ 8.) The Bank of Nova Scotia Trust Company (Bahamas) Limited (the "Trustee"), in its capacity as trustee of the Battersea Trust, held the certificate of the sole Sutton bearer share. (*Id.*) In addition, the Trustee, in its capacity as trustee of the Southampton Trust and another trust, held the certificates of all of the Wembley bearer shares.

The 2004 Act was promulgated and limited the ability of companies incorporated under the laws of the British Virgin Islands to issue bearer shares. (*Id.* at ¶ 9.) The 2004 Act required holders of bearer shares – such as the Trustee – to deposit all bearer share certificates with a custodian before December 31, 2009 (the "Transition Date"). (*Id.*) Once the shares were deposited with the custodian, the custodian would then either hold the bearer shares, or convert or exchange the bearer shares for registered shares. (*Id.*)

However, the Bearer Shares at issue here were not deposited, converted or exchanged before the Transition Date. (*Id.* at ¶ 10.) As a result, the Bearer Shares became disabled as of January 1, 2010, and the BVI Financial Services Commission ("the Commission") was entitled, under Schedule 2, Part IV, Division 5, Paragraph 37 of the 2004 Act and the BVI Insolvency Act 2003, to seek the liquidation of the Companies which would have led to the assets of the Companies becoming *bona vacantia*. (*Id.*)

Despite the fact that the Bearer Shares became disabled after the Transition Date, redemption could still be effectuated under the 2004 Act at any time before the Commission obtained a court order appointing a liquidator. (*Id.* at ¶ 11.) However, the Companies did not redeem the Bearer Shares during that period. (*Id.* at ¶ 13.)

On November 26, 2012, Mr. E. Lisk Wyckoff, the sole director of each of the Companies, died. (*Id.* at ¶ 12.) Mr. Wyckoff had served as the only director of the Companies since September 14, 2004. (*Id.*)

Sutton and Wembley's Articles of Association offered two options to appoint a new director following Mr. Wyckoff's death. (*Id.* at ¶ 14.) The first option required a resolution of a majority of the remaining directors. (*Id.*) This option could not be exercised because Mr. Wyckoff was the only remaining director for either of the Companies at the time of his death. (*Id.*)

The second option permitted members of the Companies to appoint a new director through a resolution. (*Id.* at ¶ 15.) However, neither Sutton nor Wembley had any members eligible to vote because the Bearer Shares were disabled following the failure to properly deal with them before the Transition Date in accordance with the 2004 Act. (*Id.*) Consequently, neither Sutton nor Wembley could appoint a subsequent director sufficient to exercise any of the Companies' powers of redemption over the Bearer Shares following Mr. Wyckoff's death in November 2012. (*Id.* at ¶ 16.)

On October 8, 2015, the Trustee as the then holder of the Bearer Share certificates commenced the BVI Proceeding seeking relief to enable the Bearer Shares to be dealt with and, eventually, sought appointment of a receiver pursuant to section 24(1) of the West Indies Associated States Supreme Court (Virgin Islands) Act to resolve the redemption issue. (*Id.* at ¶ 17.)

The BVI Registrar of Companies opposed the appointment of a receiver and opposed any redemption of the Companies' Bearer Shares. (*Id.* at ¶ 19; *see also* Carter Decl. at ¶ 4.)

On October 10, 2018, the BVI Court of Appeal rendered the BVI Order that resulted in the Applicant's appointment to serve as the receiver for the Companies. (*See* Carter Decl. at ¶ 3; Knock Decl. at ¶ 5.) The BVI Court of Appeal further directed the receiver to "i) accept[] the bearer shares in the [C]ompanies held by the appellant (the Bearer Shares); and ii) determin[e] whether the Bearer Shares should be redeemed under paragraph 36 of Division 5 of Schedule 2 to the [2004 Act]." (BVI Order at ¶ 81(2), attached as Ex. 1 to the Carter Decl. and Ex. 1 to the Knock Decl.)

Following the Applicant's appointment as Receiver, the Trustee sent the Applicant the Wembley Bearer Share certificates through a letter dated December 21, 2018, and the Sutton Bearer Share certificate through a letter dated January 14, 2019. (*See* Carter Decl. at ¶ 6, Exs. 4 and 5.) The Applicant accepted the Bearer Shares as directed by the BVI Order. (*See* Carter Decl. at ¶ 6.) Now, the Applicant must comply with the second directive of the BVI Order and determine whether or not to redeem these Bearer Shares. (*See* Carter Decl. at ¶ 7; Knock Decl. at ¶ 22.)

To determine whether to redeem the Bearer Shares for fair value, the Receiver must first undertake to ascertain the value of the assets of each of Sutton and Wembley. (*See* Carter Decl. at ¶ 8; Knock Decl. at ¶ 23.) To redeem any of the Bearer Shares for fair value, the Applicant understands that he must endeavor to ascertain the value of the assets of the Companies to effectuate any redemption of the Shares. (*See* Carter Decl. at ¶ 9; Knock Decl. at ¶ 28.)

Under paragraph 36 of the 2004 Act, bearer shares may be redeemed "in accordance with sections 176(3) and 179." (Knock Decl. at ¶ 24; BVI Order at ¶ 14.) The BVI Order states: "[S]ection 176(3) requires a company to give written notice to each bearer shareholder whose shares are to be redeemed, stating the redemption price and the manner in which redemption is to

be effected. There is no provision which guides the company in determining what price to offer or in prescribing the manner of redemption, whether by cash or otherwise. The effect of section 179(1)(d) is that the bearer shareholder who dissents from the redemption of his or her shares is entitled to payment of the fair value of his or her shares." (Knock Decl. at ¶ 25; BVI Order at ¶ 15.)

The BVI Order further states: "[s]ection 179(8) permits the company to make an offer at a specified price which the company determines to be the fair value of the shares, which, if accepted by the bearer shareholder, is to be paid in money upon the surrender of the share certificates." (Knock Decl. at ¶ 26; BVI Order at ¶ 16.)

Moreover, the BVI Court of Appeal stated that "sections 176(3) and 179 speak to the compulsory purchase of a bearer share at a redemption price or fair value and are inconsistent with the notion of exchange or conversion." (Knock Decl. at ¶ 27; BVI Order at ¶ 43.)

The BVI Registrar of Companies is likely to challenge in the BVI Proceeding any redemption that is made without the Applicant first undertaking to ascertain the value of the assets of Sutton and Wembley. (Knock Decl. at ¶ 29.)

The documents and information sought in the subpoena requested in this Application are therefore necessary for the redemption determination in the BVI Proceeding, and to support and justify to any challenger the determination that the Receiver must make in that BVI Proceeding.

**<u>EVIDENCE IN THE POSSESSION OF PARTIES TO BE SUBPOENAED</u>**

Since his appointment as Receiver by the BVI Court of Appeal, the Applicant has been investigating the affairs of the Companies to locate and determine the value of the assets held by the Companies. (Carter Decl. at ¶ 10.) The Applicant's investigation has revealed that Webster Bank, N.A ("Webster") holds investments in funds and stocks as custodian for and on behalf of both Sutton and Wembley. (*See id.* at ¶¶ 11-12.) Through a letter dated May 2, 2019, the

Applicant notified Webster of his appointment as Receiver for Sutton and requested that Webster provide information relating to Sutton's investments, including, *inter alia*, copies of account opening forms and account bank statements. (*See id.* at ¶ 13, Ex. 6.) Webster requested that the Applicant provide copies of original documents confirming his appointment as Receiver, which the Applicant provided through a letter dated May 27, 2019. (*See id.* at ¶ 14, Ex. 7.)

The Applicant similarly requested, through a letter dated May 30, 2019, that Webster provide such information relating to Wembley's investments. (*See id.* at ¶ 15, Ex. 8.)

However, although it has been months since the Applicant's initial letter request and the Applicant has followed up with Webster on several occasions, Webster has not provided the requested information. (*See id.* at ¶¶ 16-17.)

As a result, the Applicant is submitting the instant application to serve a Subpoena Duces Tecum on Webster and obtain the information required for the Receiver to effectuate his duties as the court-appointed receiver for the Companies in the BVI Proceeding and justify to any challengers the decision he is required to make in the BVI Proceeding. (*Id.* at ¶ 18.)

Webster is not a party to the BVI Proceeding. (Carter Decl. at ¶ 19; Knock Decl. at ¶ 30.) The Companies' account or accounts are believed to be associated with Webster's branch located at 130 Westbrook Road, Essex, Connecticut 06426, as well as in the possession, custody, and control of Webster Bank, N.A.'s corporate headquarters located at 123 Bank Street, Waterbury, Connecticut 06702. (Carter Decl. at ¶ 20.)

The Applicant additionally seeks to serve a Subpoena Duces Tecum on Ms. Elizabeth Wyckoff, who resides at 5-1 Davis Road East, Old Lyme, CT 06371. (*Id.* at ¶ 21.) As stated above, Mr. E. Lisk Wyckoff, the sole director of the Companies in 2012, died on November 12, 2012. Ms. Elizabeth Wyckoff is the Fiduciary for his estate. (*Id.*) As the Estate's Fiduciary, Ms.

Wyckoff, upon information and belief, holds the Companies' records and financial documents essential for the Receiver to ascertain the value of the assets of Sutton and Wembley so that he can fulfill any obligations as directed by the BVI Court of Appeal in the BVI Proceeding. (*Id.* at ¶ 22.)

The Applicant, therefore, is submitting the instant application to serve a Subpoena Duces Tecum on Elizabeth Wyckoff and obtain the information required for the Receiver to effectuate his duties as the court appointed Receiver for the Companies in the BVI Proceeding and to justify to any challengers the decision he is required to make in the BVI Proceeding.

Ms. Wyckoff is not a party to the BVI Proceeding. (Carter Decl. at ¶ 22; Knock Decl. at ¶ 30.)

**ARGUMENT**

The function of Section 1782 is to assist the gathering of evidence located in the United States in aid of foreign proceedings. *See Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 248 (2004). A district court should consider a Section 1782 discovery request in light of the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts[.]" *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). "In light of these goals, the section has become amenable to 'increasingly broad applicability.'" *In re Application of Hill*, 2005 U.S. Dist. LEXIS 10838, *5 (S.D.N.Y June 3, 2005). Indeed, the statute was intended as "a one way street" to "grant wide assistance to others, but demand nothing in return." *Malev Hungarian Airlines*, 964 F.2d at 101 (citation and quotation omitted).

It is common and proper for the court to grant a Section 1782 application *ex parte*, with the respondent later having the opportunity to challenge the discovery request by moving to

quash pursuant to Federal Rule of Civil Procedure 45(c)(3). *Gushlak v. Gushlak*, 486 Fed. Appx. 215, 217 (2d Cir. 2012).

## I. **The Applicant Satisfies Section 1782's Statutory Requirements for Relief**

To obtain discovery pursuant to Section 1782, an applicant must establish that three initial statutory requirements are met:

(1) The person from whom the discovery is sought resides or is found in the district where the application is filed;

(2) The discovery is for use in a proceeding before a foreign tribunal; and

(3) The application is made by a foreign or international tribunal or any "interested person."

*See* 28 U.S.C. § 1782(a). The United States Supreme Court has cautioned lower courts against reading any additional requirements into the statute's application. *See Intel*, 542 U.S. at 255 (advising lower courts to resist placing additional "categorical limitations . . . on the statute's reach."). *See also In re Application of Aldunate*, 3 F.3d 54, 59 (2d Cir. 1993) ("[W]e are not free to read extra-statutory barriers to discovery into Section 1782.").

Here, the Applicant's request for discovery satisfies Section 1782's statutory prerequisites.

First, currently known Sutton and Wembley accounts are or were held at Webster's branch located at 130 Westbrook Road, Essex, Connecticut 06426. (*See* Carter Decl. at ¶ 20.) Ms. Wyckoff resides at 5-1 Davis Road East, Old Lyme, Connecticut 06371. (*See id.* at ¶ 21.) Both addresses are within the district of this Court.

Second, the Applicant seeks discovery for use in a proceeding before a foreign tribunal, namely the BVI Proceeding, to determine whether and in which manner the Companies' Bearer Shares should be redeemed as directed by the BVI Court of Appeal through the BVI Order. (*See*

Carter Decl. at ¶¶ 5-9, 18, 22.) The evidence that the Applicant requests is necessary in the BVI Proceeding as instructed to by the BVI Court of Appeal. (*See id.*; *see also* Knock Decl. at ¶¶ 22-29.)

"[T]he term 'for use' in Section 1782 has only its ordinary meaning – that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'" *Bouvier v. Adelson (In re Accent Delight Int'l Ltd.)*, 869 F.3d 121, 132 (2d Cir. 2017). The Second Circuit's holding in *Aldunate* is instructive. In *Aldunate*, a Chilean court appointed parties to serve as provisional guardians of a Chilean national and directed the guardians to obtain certified inventory of the Chilean national's property. The provisional guardians sought discovery through Section 1782 to ascertain certain information concerning the Chilean national's assets in the United States. The Court in *Aldunate* granted the Section 1782 application based upon the plain language of Section 1782 and further held that "[t]he evidence sought in the district court pursuant to the order of the Chilean court is clearly 'for use in' the proceeding. Whether or not the compilation of the inventory is contentious or adjudicative is irrelevant, because it is part of the incompetency proceeding." *Aldunate*, 3 F.3d at 62.

*In re Application of Hill*, 2005 U.S. Dist. LEXIS 10838 (S.D.N.Y June 3, 2005), further confirms that the instant application should be granted. In *Hill*, a Hong Kong court appointed liquidators in a winding up proceeding concerning two Hong Kong companies. 2005 U.S. Dist. LEXIS 10838, at *2. The liquidators filed a Section 1782 application to serve subpoenas on an accounting partnership and certain current and former partners to obtain financial information and records. *Id.* at *4. The Court observed that the liquidators were "[a]cting in a quasi-judicial capacity" and "[we]re empowered to take into their custody all property and choses of action; to identify, pursue and realize assets of the company; to receive, evaluate and adjudicate creditor

claims; and to distribute assets to creditors." *Id.* at *9. The Court granted the Section 1782 application because "the Liquidators herein [we]re acting as court-appointed trustees pursuing assets on behalf of the debtor estates" and sought discovery to "be used in carrying out their liquidation duties as court-appointed officers, including both the reconstruction of financial transactions and the recovery of assets belonging to the debtor companies, and the investigation and litigation of claims by the debtor companies against third parties." *Id.* at **12-13.[1]

Similarly here, the BVI Court of Appeal appointed the Receiver with the express purpose and directive that he determine the issue of redemption of the Companies' Bearer Shares. (*See* Carter Decl. at ¶ 3; Knock Decl. at ¶ 5; BVI Order at ¶ 81(2).) To do so, the Receiver must undertake to ascertain the value of the Companies in which the Bearer Shares are held. (*See* Carter Decl. at ¶ 8; Knock Decl. at ¶ 23.) To ascertain that value, the Receiver must obtain information from people and entities holding, or which held, assets of the Companies. Thus, the Applicant, having been appointed through the BVI Court of Appeal as the Companies' Receiver, is seeking discovery regarding the Companies' assets to make a determination required by the

---

[1] Certain decisions in Second Circuit courts have denied Section 1782 applications seeking discovery in aid of proceedings, but those decisions concerned proceedings that were not yet reasonably contemplated or that dealt with post-judgment enforcement proceedings. *See, e.g.*, *Euromepa v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998) (holding that French bankruptcy proceeding was *res judicata* on the merits and that "the already extant judgment [was] merely being enforced"); *Jiangsu S.S. Co. v. Success Superior Ltd.*, 2015 U.S. Dist. LEXIS 18388, **11-13 (S.D.N.Y Jan. 6, 2015) (holding that Section 1782 application seeking "discovery in aid of the enforcement of an arbitration award seems unreasonably premature" where no arbitration proceeding was even commenced or reasonably contemplated). Those cases have no application here because (1) the Applicant requests discovery that is critical for him to effectuate his duties as directed by the BVI Court of Appeal through the BVI Order (*see* Carter Decl. ¶ 17), and (2) the BVI Proceeding remains contentious since the BVI Registrar of Companies opposed the redemption of the Bearer Shares and the appointment of a receiver and is highly likely to challenge redemption in the BVI Proceeding if any redemption is made without first undertaking to ascertain the value of the assets of the Companies. (*See* Knock Decl. ¶¶ 19, 29.)

BVI Court of Appeal in the BVI Proceeding and to support and justify that determination in the face of a challenge by either of the litigants.

Moreover, here, the matter is contentious. The appointment of the Receiver was a procedural step by the BVI Court, and the substantive (or merits) aspect of the BVI Proceeding is to decide whether the Bearer Shares should be redeemed, and, if so, what method of redemption should be used. In this respect, the BVI Proceeding remains adjudicative until the Applicant renders a decision resolving the issue of redemption. The BVI Registrar of Companies opposed the redemption of the Bearer Shares and opposed the appointment of a receiver. (Knock Decl. at ¶ 19.) And, if any redemption is made without first undertaking to ascertain the value of the assets of the Companies, BVI counsel states that the BVI Registrar of Companies is likely to challenge such redemption in the BVI Proceeding. (*See id.* ¶ 29.) Therefore, the documents sought by the subpoena that will be issued pursuant to this Section 1782 proceeding are necessary not only for the Applicant to decide whether to redeem and, if so, in what manner, but also are necessary for the Applicant to substantiate his determination before the BVI Court in the BVI Proceeding upon any challenge by the BVI Registrar of Companies.

Third, and finally, the Applicant, as the court-appointed receiver in the BVI Proceeding, is an interested party under the statute.

## II. The Court Should Exercise its Discretion to Grant the Applicant's Section 1782 Application

If these statutory requirements are satisfied, the district court is free to grant the Applicant's request for discovery assistance. 28 U.S.C. § 1782(a). In *Intel*, *supra*, the Supreme Court identified four factors that should guide the district court's consideration (the "*Intel* factors"):

> (1) Whether the documents or testimony sought are within the foreign tribunal's reach, and thus accessible absent section 1782 aid;

> (2) The nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S, federal-court judicial assistance;
>
> (3) Whether the section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of foreign country or the United States; and
>
> (4) Whether the subpoena contains unduly burdensome intrusive or burdensome requests.

*In re Microsoft Corp*., 428 F.Supp.2d 188, 192-93 (S.D.N.Y. 2006), citing *Intel*, 542 U.S. at 264-65).[2]

Here, not only does the Applicant's application satisfy Section 1782's statutory requirements, but the *Intel* factors counsel strongly in favor of this Court granting the Applicant's request for discovery. Additionally, the BVI Proceeding is one of first impression in the courts of the BVI since it seems to be the first time the BVI Court addressed the issue of un-deposited bearer shares and their redemption after the Transition Date. (*See* Knock Decl. at ¶ 18.) This makes the Applicant's request for the instant discovery even more compelling because obtaining this discovery is the only way to even attempt to determine the value of the assets of Companies.

### A. Webster and Ms. Wyckoff Are Not Parties to the BVI Proceeding

Webster and Ms. Wyckoff are not parties to the BVI Proceeding. (Carter Decl. at ¶ 18; Knock Decl. at ¶ 30.) Thus, as the Supreme Court identified, the need for foreign assistance to supplement the discovery in the BVI Proceeding is apparent. *See Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence….In contrast, nonparticipants in the foreign proceeding may be outside the

---

[2] There is no requirement under 28 U.S.C. § 1782 for the evidence sought in the United States to be admissible or discoverable in the British Virgin Islands. *Intel*, 542 U.S. at 260. In any event, BVI counsel states that there is no reason to believe that the BVI Court will not be receptive to the discovery produced as a result of this Application. (*See* Knock Decl. at ¶ 33.)

foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." (internal citations omitted)).

**B. The BVI Court Will Likely Accept this Court's Assistance**

Courts in this circuit have previously held that courts should "err on the side of permitting requested discovery" where there is no "authoritative proof" that the foreign government would not be receptive to the materials. *See In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, 2006 U.S. Dist. LEXIS 94161 (S.D.N.Y. Jan. 4, 2007), *21 (noting that this "liberal" rule is supported by "the availability of corrective measures abroad," namely that the foreign court can "simply choose to exclude or disregard" the material); *OJSC Ukrnafta v. Carpatsky Petroleum Corp.*, 2009 U.S. Dist. LEXIS 109492, *15 (D. Conn. 2009) (granting application where there was no basis to believe evidence to be obtained would not be accepted in foreign tribunal). Additionally, Section 1782 assistance is available even where the materials would clearly not be obtainable if located in the foreign jurisdiction. *Intel*, 542 U.S. at 260 ("nothing in the text of Section 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there").

The BVI Court may order entities and individuals who are not parties to legal proceedings to provide disclosure, but only where those non-parties have submitted to the jurisdiction of the BVI Court. (*See* Knock Decl. at ¶ 31.) Webster and Ms. Wyckoff are not subject to the jurisdiction of the BVI Court. (*See id.*) Further, the BVI Court of Appeal has not expressed any opposition to any evidence gathered through Section 1782 proceedings in connection with the BVI Proceeding, nor would it be expected to express such opposition. (*See id*. at ¶ 32.) Lastly, there is no reason to believe that the BVI Court, a common law jurisdiction, will not be receptive to the discovery produced as a result of this Application. (*See id*. at ¶ 33.)

Indeed, as noted above, the Applicant requires this discovery to be able to perform his court-appointed duties and to resolve the issue of the redemption of the Companies' bearer shares. (*See* Carter Decl. at ¶¶ 18, 22.) As such, this factor weighs in favor of granting the Application.

**C. This Application Is Made in Good Faith and Is Not Made to Circumvent the Discovery Rules of the BVI Court**

This request is not made in an effort to circumvent foreign proof-gathering restrictions. (*See* Knock Decl. at ¶ 34.) *See also OJSC Ukrnafta*, *supra* (finding that there was no evidence that applicant was attempting to conceal an attempt to circumvent foreign proof-gathering restrictions).

Here, the Applicant satisfies this good faith basis because he will use the requested documents to ascertain the value of the Companies' assets in resolving the redemption issue, and to substantiate the decision he makes, in the BVI Proceeding. (*See*, *e.g.*, Carter Decl. at ¶¶ 18, 22.) The BVI courts provide litigants the means to obtain and use discovery from non-parties, and the requested discovery from Webster and Ms. Wyckoff will not circumvent any limits on discovery imposed by BVI courts. (*See* Knock Decl. at ¶ 31.)

**D. The Subpoena Requests Are Not Unduly Intrusive or Burdensome**

Lastly, the requests for documents are neither unduly intrusive nor burdensome. The Applicant is making these document requests as the court-appointed Receiver for the Companies and, indeed, is asking for details of the Companies' own investment accounts and other financial information. (*See* Carter Decl. at ¶¶ 11-22.) The Companies are entitled to obtain information pertaining to their own account and investment holdings. Moreover, the requested information and documents are necessary so that the Applicant can ascertain the value of the assets held by the Companies to determine the issue of redemption of shares, and to substantiate the decision he

makes, in the BVI Proceeding as directed by the BVI Court of Appeal in the BVI Order. (Carter Decl. at ¶¶ 18, 22.)

**CONCLUSION**

The Applicant respectfully requests that this Court grant this Application pursuant to 28 U.S.C. § 1782, and issue an Order authorizing him to serve the subpoenas and document requests in the forms attached to his Application.

Dated: New Haven, Connecticut
August 20, 2019

**WITHERS BERGMAN LLP**

By: ______________________________

John A. Farnsworth, Esq.
157 Church Street
New Haven, Connecticut 06510-2100
Tel: (203) 789-1320
Fax: (203) 785-8127
john.farnsworth@withersworldwide.com
*Attorneys for Nicholas Carter, as Receiver for Sutton, Limited and Wembley, Limited*